Miscellaneous Docket No. 24-121

IN THE
# United States Court of Appeals for the Federal Circuit

IN RE HAPTIC, INC.,

*Petitioner.*

On Petition for Writ of Mandamus to the
United States District Court for the
Western District of Texas
No. 1:23-cv-01351-RP, Hon. Robert Pitman

## APPLE INC.'S RESPONSE TO
## PETITION FOR WRIT OF MANDAMUS

Roger A. Denning
Seth M. Sproul
FISH & RICHARDSON P.C.
12860 El Camino Real, Suite 400
San Diego, CA  92130

Joy B. Kete
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA  02210

Melanie L. Bostwick
Jonas Q. Wang
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
2100 Pennsylvania Avenue, NW
Washington, DC  20037
(202) 339-8400

*Counsel for Respondent*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 24-121

**Short Case Caption** In re: Haptic, Inc.

**Filing Party/Entity** Apple Inc.

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 04/23/2024

Signature: /s/ Melanie L. Bostwick

Name: Melanie L. Bostwick

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☑ None/Not Applicable |
| Apple Inc. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

FORM 9. Certificate of Interest

**4. Legal Representatives.**  List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4).

☐   None/Not Applicable          ☐   Additional pages attached

| | | |
|---|---|---|
| Quiyi Wu | Scott, Douglas & McConnico, LLP | Steven J. Wingard |
| Stephen L. Burbank | Robby Earle | |
| | | |

**5. Related Cases.**  Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐   Yes (file separate notice; see below)   ☑   No   ☐   N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b).  **Please do not duplicate information.**  This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal.  Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**.  Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).  Fed. Cir. R. 47.4(a)(6).

☑   None/Not Applicable          ☐   Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ................................................................. i

TABLE OF AUTHORITIES .................................................................. vi

INTRODUCTION ................................................................................ 1

FACTUAL BACKGROUND AND PROCEDURAL HISTORY ................ 3

    Separate from this litigation, Haptic and Apple engage in business discussions in Houston and Northern California ................................................................................. 3

    Haptic sues Apple for patent infringement in the Western District Of Texas ...................................................................... 4

    Apple seeks transfer to the Northern District of California .......... 6

    The district court grants transfer to the Northern District of California .............................................................................. 10

REASONS FOR DENYING THE WRIT .......................................... 14

    I.    Haptic Fails to Show a Clear and Indisputable Right to the Writ. .......................................................................... 15

        A.    The district court properly assessed the private-interest factors. .......................................................... 15

            1.    The district court correctly found that the sources of proof factor strongly favors transfer. .......................................................... 16

            2.    The district court correctly determined that the witness-convenience factor weighed heavily in favor of transfer. ................................ 20

            3.    The district court properly found the compulsory-process factor neutral. ..................... 29

            4.    The district court correctly found the practical-problems factor neutral. ...................... 32

        B.    The district court properly assessed the public-interest factors. ........................................................... 33

1.    The district court properly gave minimal weight to the court-congestion factor. ................ 34

2.    The district court correctly found that the local-interest factor heavily favors transfer. ...... 37

II.    Mandamus Is Not Appropriate Under the Circumstances. ..................................................... 40

CONCLUSION .................................................................... 42

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Acer Am. Corp.*,
    626 F.3d 1252 (Fed. Cir. 2010) ............................................................ 38

*In re Adobe Inc.*,
    823 F. App'x 929 (Fed. Cir. 2020) ....................................................... 34

*In re Apple Inc.*,
    818 F. App'x 1001 (Fed. Cir. 2020) ..................................................... 31

*In re Apple Inc.*,
    979 F.3d 1332 (Fed. Cir. 2020) ................................... 18, 29, 34, 38, 39

*In re Apple Inc.*,
    No. 2021-181, 2021 WL 5291804 (Fed. Cir. Nov. 15, 2021) ............... 31

*In re Apple Inc.*,
    No. 2022-137, 2022 WL 1676400 (Fed. Cir. May 26, 2022) .............. 19

*Cheney v. U.S. Dist. Ct.*,
    542 U.S. 367 (2004) ............................................................................. 14

*In re Clarke*,
    94 F.4th 502 (5th Cir. 2024) ............................................ 14, 28, 37, 40

*Def. Distributed v. Bruck*,
    30 F.4th 414 (5th Cir. 2022) ............................................................... 25

*In re DoDots Licensing Sols. LLC*,
    No. 2024-100, 2023 WL 8642716 (Fed. Cir. Dec. 14, 2023) ... 15, 18, 32

*Favela v. Collier*,
    91 F.4th 1210 (5th Cir. 2024) ............................................................. 24

*In re Genentech, Inc.*,
    566 F.3d 1338 (Fed. Cir. 2009) ........................................................... 34

*In re Google LLC,*
58 F.4th 1379 (Fed. Cir. 2023) ........................................................ 30

*In re Hoffmann-La Roche Inc.,*
587 F.3d 1333 (Fed. Cir. 2009) ...................................................... 40

*HTC Corp. v. IPCom GmbH & Co.,*
667 F.3d 1270 (Fed. Cir. 2012) ...................................................... 19

*In re Juniper Networks, Inc.,*
14 F.4th 1313 (Fed. Cir. 2021) ................................................ 18, 31

*In re Nintendo,*
589 F.3d 1194 (Fed. Cir. 2009) ...................................................... 19

*In re Planned Parenthood Fed'n Am.,*
52 F.4th 625 (5th Cir. 2022) ............................................ 15, 18, 33

*In re Radmax, Ltd.,*
720 F.3d 285 (5th Cir. 2013) .......................................................... 17

*In re Samsung Electronics Co.,*
2 F.4th 1371 (Fed. Cir. 2021) ........................................................ 38

*In re Samsung Electronics Co.,*
No. 2023-146, 2023 WL 8642711 (Fed. Cir. Dec. 14, 2023) .............. 20

*In re TikTok, Inc.,*
85 F.4th 352 (5th Cir. 2023) ................................ 17, 18, 20, 27, 29, 38

*VisionX Techs., LLC v. Sony Grp. Corp.,*
No. 2:22-cv-00178-RSP, 2023 WL 3572898 (E.D. Tex. May
19, 2023) ........................................................................................ 32

*In re Volkswagen AG,*
371 F.3d 201 (5th Cir. 2004) .......................................................... 28

*In re Volkswagen of Am., Inc.,*
545 F.3d 304 (5th Cir. 2008) ........................... 14, 16, 30, 32, 33, 39, 40

*Washington v. Norton Mfg., Inc.,*
588 F.2d 441 (5th Cir. 1979) .......................................................... 25

**Statutes**

28 U.S.C. § 1404(a) ....................................... 1, 2, 10, 15, 29, 33, 37, 38, 41

**Rules and Regulations**

Fed. R. Civ. P. 26(a)(1)(A)(i) ...................................................... 23

## INTRODUCTION

This case presented a strong and straightforward candidate for transfer under 28 U.S.C. § 1404(a).  Plaintiff Haptic, Inc., claims to be headquartered at the Austin residence of its chief executive officer, but the ties between this litigation and the forum Haptic chose, the Western District of Texas, are otherwise minimal.  The center of gravity is instead in the Northern District of California, which is not only home to defendant Apple's headquarters but to the teams that designed, developed, and work with the technology and products that Haptic accuses of patent infringement.  It is also home to the bulk of the evidence that will be relevant to the parties' dispute.  Haptic's arguments against transfer depended on prioritizing its own documents and alleged witnesses in Texas over Apple's in California, even though Apple's conduct is the focus of the dispute.  And Haptic relied heavily on activities that occurred outside its chosen forum, in the Southern District of Texas, such as Haptic's early business interactions with Apple (before the asserted patent existed).  Because the clear weight of relevant factors favored the Northern District of California, the district

court granted transfer "[f]or the convenience of parties and witnesses" and "in the interest of justice." 28 U.S.C. § 1404(a).

Haptic's challenge to that ruling is inconsistent with the record and the law. In particular, Haptic mischaracterizes the record in an attempt to insist that the parties' interactions in Texas are relevant. Haptic also mischaracterizes the district court's ruling to try to suggest that concerns about court congestion drove the outcome; in fact, the district court expressly (and correctly) treated the court-congestion factor as neutral. And Haptic mischaracterizes the role of recent Fifth Circuit precedent in this dispute. While Haptic insists the district court ignored key Fifth Circuit rulings, Haptic did not cite any of those rulings to the district court—and, contrary to Haptic's arguments, the rulings are fully consistent with the law the district court cited and applied.

Haptic cannot overcome the record or the law. And it has not shown any error in the district court's decision to grant transfer, let alone the type of clear abuse of discretion that would warrant mandamus relief. The Court should deny the petition.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### *Separate from this litigation, Haptic and Apple engage in business discussions in Houston and Northern California*

Haptic is a Delaware company, currently based at the Austin home of its CEO. Appx22. Haptic was formerly known as Swan Solutions, Inc., which was based in Houston. Appx22; Appx38. For simplicity, Apple will refer to the company at all times as "Haptic." Haptic developed Knocki, a wireless device that "activates surfaces into touch control interfaces for terminal devices." Appx27.

In 2016, an Apple Business Specialist based in Houston reached out to Haptic to discuss how Apple could sell its computers and business services to Haptic. SAppx9; SAppx34-35; Appx90. In December 2016, Haptic's CEO and his colleagues met with a team of Houston-based Apple retail employees at an Apple Store in Houston to discuss the products Apple could provide to Haptic as part of Apple's enterprise services. SAppx9; Appx29; SAppx34; Appx90.

Although Apple did not set up the meeting for this purpose, Haptic independently brought up the possibility of selling Knocki in Apple Stores. SAppx12; SAppx34; Appx90. Because the Apple employees in attendance had no authority regarding this topic, they

3

connected Haptic with Apple's Retail Product Merchandising Team, based in Cupertino, California, for further discussions.  SAppx9; SAppx34; Appx90; SAppx42-43.  All of these discussions took place pursuant to a confidentiality agreement governed by California law. SAppx11; SAppx29-32.

A few months later, Haptic also expressed interest in obtaining a license to Apple technology through Apple's "Made for iPhone" ("MFi") certification program, which would allow Haptic to represent that Knocki is compatible with Apple's products.  SAppx45-47; SAppx58. Haptic coordinated with a member of Apple's MFi team based in Cupertino, California.  SAppx46-47; SAppx43.  Although it obtained the Apple license and access to Apple's confidential technical specifications, Haptic never submitted Knocki to Apple or a third-party lab for testing and so never received MFi certification.  SAppx47; SAppx58-59.

### *Haptic sues Apple for patent infringement in the Western District Of Texas*

Meanwhile, Haptic was pursuing the application that would lead to U.S. Patent No. 9,996,738, which issued in June 2018.  Appx38.  This patent did not exist at the time of the parties' earlier communications,

and no Apple employee recalls discussion of any specific patents or applications.  SAppx9; Appx38; SAppx35; Appx90; SAppx58-59.

In November 2023, Haptic sued Apple in the Austin Division of the Western District of Texas, accusing it of infringing the '738 patent. Appx22-36.  The patent, titled "System and method for controlling a terminal device," describes "a control system on an exterior mounting surface independent from [a] terminal device," such as a "television, lighting fixture, thermostat or laptop," which can "detect gestures … to generate commands for the terminal device."  Appx46 1:40-47; *see* Appx24; Appx38; Appx22-37.  Haptic accuses various models of Apple's iPhone devices of infringing its patent by virtue of their "Back Tap" accessibility feature—that is, the feature that allows a user to tap the back of the iPhone to perform certain functions.  Appx31-35.

Haptic claims a current principal place of business located at 6016 Chictora Cove, Austin, TX 78759.  Appx22.  That address appears to be the residential home of its CEO, Jake Boshernitzan.  SAppx20.  Other than this house, this case has minimal ties to the Western District of Texas.  SAppx6.  The development of the asserted patent by Swan

Solutions, for example, took place in Houston, which is located in the Southern District of Texas.  SAppx12; Appx38.

### *Apple seeks transfer to the Northern District of California*

Because this case lacks any meaningful connection to the Western District of Texas, Apple moved to transfer to the Northern District of California.  *See* SAppx1-27.

As Apple demonstrated in its transfer briefing and supporting declarations, the accused features were primarily researched, designed, developed, and implemented by Apple engineers in the Northern District of California.  SAppx7; *see* Appx89-93; Appx105-107; SAppx33-43; SAppx57-59.  The Back Tap feature was developed by Apple's Advanced Development Group, then implemented in the accused iPhones by the iOS Accessibility team.  SAppx7; Appx106.  The engineers from these teams who worked on the Back Tap feature (and are listed as inventors on an Apple patent covering that feature) are located in Northern California, Seattle, and Canada.  SAppx7; Appx106.

Similarly, Apple's employees most knowledgeable about the marketing, licensing, sales, and finance related to the accused products are nearly all located in the Northern District of California.  SAppx8.

For that reason, the most likely witnesses and evidence are concentrated in the Northern District of California. SAppx15.

In addition, Apple identified several potentially relevant third parties in the Northern District of California. SAppx12-13. Some are owners of system prior art on which Apple intends to rely for its invalidity case. This includes Google, based in the Northern District of California, which acquired a company called Bump Technologies, Inc. Bump developed a mobile application that uses information about the positioning of two mobile devices to trigger an information transfer. SAppx12. It also includes TDK InvenSense, headquartered in San Jose, California, and Bosch, which has its North American headquarters in Sunnyvale, California, both of which have implemented "tap detection" features. SAppx13. In addition, Apple identified certain former Apple employees who are inventors on Apple's Back Tap patent who appear to reside in Northern California. SAppx12-13.

Apple's transfer motion acknowledged Haptic's CEO's residence in Austin, but demonstrated that this limited connection to the Western District of Texas is heavily outweighed by the comparative convenience of Northern California. SAppx6-13. Apple also rebutted Haptic's

attempt to show some other connection to its chosen litigation forum. SAppx9-11.  In particular, while Haptic's complaint relied on the early communications between its predecessor company and Apple, Appx28-31, those interactions took place in Houston, not in the Western District of Texas, or with Apple personnel in Northern California, SAppx9. Furthermore, while Haptic alleges that the Houston meeting is relevant to its claim of willful infringement, Apple explained that this is impossible because the '738 patent did not yet exist, the parties did not discuss any specific patents or applications, and, in any event, the Apple employees in attendance had no role in the design or development of the accused technology.  SAppx9.

With one exception, moreover, none of those employees resides in the Western District of Texas.  Apple provided a sworn declaration from the one employee, Adam Norwood, who moved to Austin after the parties' communications ceased; he verified that he had no knowledge of the accused technology (and therefore could not speak to willfulness). SAppx10; Appx89-90.  Apple thus showed that Mr. Norwood is unlikely to be a trial witness and, furthermore, that he is willing to appear in Northern California in the unlikely event his testimony is needed.

SAppx11; Appx91. Apple also addressed the employees who communicated with Haptic's predecessor about selling Knocki in Apple stores and about MFi certification, demonstrating that all of them are based in the Northern District of California (as are two former Apple employees from the relevant team). SAppx11; SAppx42-43; SAppx47; SAppx57. In other words, to the extent Haptic's willfulness claim turns on information that Apple supposedly learned about Haptic's product, the relevant witnesses are the Apple employees in California, not the one in Austin.

Haptic opposed transfer. Appx296-318. It emphasized the Austin presence of its CEO and a contract engineer knowledgeable about Knocki, though it did not explain why this engineer's knowledge would be relevant to any issue in this litigation. Appx307-308. It argued that the compulsory-process factor weighed against transfer, citing several alleged non-party witnesses in Austin or Houston and disputing the merits of Apple's identified prior-art invalidity arguments. Appx312-314. Haptic further argued that the sources-of-proof factor was neutral, asserting that relevant documents are located in both Austin and California. Appx310-312. And it claimed that practical problems

disfavor transfer, citing the per diem rates for federal employees in San Francisco versus Austin.  Appx315.

On the public-interest factors, Haptic argued that court congestion disfavored transfer because the district court had already resolved motions for pro hac vice admissions and extensions of time.  Appx315-316.  And it said local interest "strongly disfavor[ed] transfer," citing both parties' general presence in Austin without linking that presence to this suit.  Appx316-317.

Haptic concluded its opposition with a single, unelaborated sentence requesting, in the alternative, that the district court exercise its "broad discretion" and allow venue discovery.  Appx318.  Haptic did not, however, identify any specific discovery that might be needed (or why).

### *The district court grants transfer to the Northern District of California*

The district court determined that the § 1404(a) factors "clearly weigh in favor of transfer" and therefore granted Apple's motion. Appx14.  The district court concluded that three factors—sources of proof, witness convenience, and local interest—weighed strongly in

favor of transfer, with the remainder neutral, and none weighing against transfer.  Appx14.

In finding that the sources of proof factor weighed strongly in favor of transfer, the district court "look[ed] to the location where the allegedly infringing products were researched, designed, developed, and tested."  Appx5 (citation omitted).  The district court also rejected Haptic's argument that remotely accessing Apple's electronic sources, including source code, would present only a "minor inconvenience," crediting Apple's showing that, in this case, access is more readily available in the Northern District of California due to access restrictions.  Appx6-7.

In determining that the witness-convenience factor weighed heavily in favor of transfer, the district court considered Apple's showing that the engineers who researched, designed, developed, and implemented the accused feature are concentrated in the Northern District of California, with others also in Washington and Canada, but with none in the Western District of Texas.  Appx10 (citing SAppx20; Appx106).  The district court acknowledged Haptic's intention to call its Austin-based CEO (Mr. Boshernitzan), an Austin-based contract

engineer (Brayden Kelly), and the Houston-based co-inventor of the '738 patent (Ohad Nezer). Appx10. But the concentration of likely witnesses was in the Northern District of California, and the district court was unpersuaded that Apple's mere Austin presence would mitigate the inconvenience to the numerous California-based employees who would be forced to travel for trial. Appx11. Finally, even if any of Apple's attendees at the 2016 meeting could be said to be potential witnesses, the district court credited Apple's showing that more of them are in Northern California than in Texas. Appx11 & n.4.

In finding the compulsory-process factor neutral, the district court concluded that the parties "identified a similar number of potential non-party witnesses" subject to compulsory process in either district. Appx7-9. On practical problems, the district court explained that Haptic had failed to provide authority for its argument about relative trial costs. Appx11.

The district court found the court-congestion factor neutral. Although it noted over 900 pending civil cases on its docket, the district court also acknowledged precedent deeming this factor speculative and entitled to little weight. Appx12. The district court rejected Haptic's

attempt to tilt this factor against transfer by citing supposed case progression, noting the early stage of the litigation. Appx13; Appx315. "Overall," the district court concluded, "this factor is neutral or weighs slightly in favor of transfer at best." Appx13. In its final tally of factors, however, the district court considered it neutral. *See* Appx14.

On the local-interest factor, the district court emphasized the focus on "a particular venue and the events that gave rise to a suit," rather than the parties' general presence in a district. Appx13-14. The district court explained that it was not Haptic's creation of its Knocki technology that gave rise to this suit, but Apple's development of technology that allegedly infringed on Haptic's '738 patent—and that development took place predominantly in Northern California, and not at all in Texas. Appx13-14. The district court acknowledged Haptic's insistence that the parties' 2016 meeting was relevant to local interest, but explained that it took place in Houston, not in the Western District of Texas, and so could not create a local interest in Haptic's chosen forum. Appx14.

On April 14—between the district court's April 8 ruling and the April 15 order implementing transfer—the Western District of Texas

reassigned the case from "Judge Docket II – Austin" to Judge Robert Pitman, the district judge who had presided over the proceedings to date and resolved the transfer motion. Appx21; *contra* Pet. 2 n.1 (stating the "case is currently assigned to 'Judge Docket II – Austin'"). Haptic then petitioned this Court for a writ of mandamus.

## REASONS FOR DENYING THE WRIT

A petitioner seeking mandamus relief must (1) show a "clear and indisputable" right to the writ; (2) have "no other adequate means to attain the relief [it] desires"; and (3) demonstrate that "the writ is appropriate under the circumstances." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 311 (5th Cir. 2008) (en banc) (*Volkswagen II*) (quoting *Cheney v. U.S. Dist. Ct.*, 542 U.S. 367, 380-81 (2004)). Apple does not dispute that, under Fifth Circuit precedent, the second prong is satisfied when a petitioner challenges a grant of transfer. *See In re Clarke*, 94 F.4th 502, 516 (5th Cir. 2024). But Haptic has not shown that the remaining mandamus criteria are met here. Far from committing any abuse of discretion, the district court analyzed the relevant private- and public-interest factors and anchored its analysis in both the evidentiary record and the binding precedent of the Fifth

Circuit and this Court.  Haptic's mandamus petition, in contrast,

misrepresents the record, contradicts the governing law, and relies

heavily on arguments that Haptic could have presented to the district

court but chose not to.  In these circumstances, mandamus is highly

inappropriate.

## I.    Haptic Fails to Show a Clear and Indisputable Right to the Writ.

The district court properly assessed the § 1404(a) factors under

governing precedent to grant transfer.  The record fully supports the

district court's determinations, and Haptic has not shown that this

transfer grant amounts to a "clear abuse[] of discretion … produc[ing a]

patently erroneous result[]."  *In re DoDots Licensing Sols. LLC*, No.

2024-100, 2023 WL 8642716, at *1 (Fed. Cir. Dec. 14, 2023) (quoting *In

re Planned Parenthood Fed'n Am.*, 52 F.4th 625, 629 (5th Cir. 2022)).

### A.    The district court properly assessed the private-interest factors.

The private-interest factors relevant to a § 1404(a) transfer

analysis include: "(1) the relative ease of access to sources of proof;

(2) the availability of compulsory process to secure the attendance of

witnesses; (3) the cost of attendance for willing witnesses; and (4) all

other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkwagen II*, 545 F.3d at 315 (citation omitted). Haptic disagrees with the district court's findings on each of the private-interest factors, Pet. 11-25, 29-32, but it fails to show any error, let alone a mandamus-worthy one.

### 1. The district court correctly found that the sources of proof factor strongly favors transfer.

The district court correctly determined that the sources of proof factor weighed strongly in favor of transfer. Appx5-7. The district court found that Apple's source code and its electronic and paper records for the accused feature are predominantly generated from, stored in, and accessible from the Northern District of California, with access to confidential technical documents limited to credentialed Apple engineers based in California, Washington, and Canada. Appx5-6; *see* SAppx9; Appx106. Likewise, the district court found that the marketing, financial, and licensing records relevant to this case are primarily in or accessed from the Northern District of California, and are not located in Texas. Appx6; SAppx9; SAppx41; Appx92-93; SAppx39. Meanwhile, the district court found Haptic's generic assertion that its documents in Austin might be relevant to

"infringement, damages, the patent's priority date, and non-obviousness," Appx311, to be "unavailing" in comparison to Apple's "clear[] show[ing]" in its detailed declarations that "the bulk of its relevant evidence is in NDCA, not WDTX." Appx6.

Haptic makes two arguments for why the district court erred. Neither is persuasive.

First, Haptic argues that the district court ignored binding Fifth Circuit law. Pet. 12. That argument is meritless. Though Haptic now argues that "[t]he District Court did not cite recent Fifth Circuit cases *In re TikTok, Inc.* or *In re Planned Parenthood Fed'n Am., Inc.*," Pet. 12, Haptic did not cite *either case* in its transfer opposition. Appx296-318. Haptic can hardly fault the district court for failing to address cases Haptic never cited.

In any event, the district court's analysis is entirely consistent with *TikTok* and *Planned Parenthood*. The district court correctly stated Fifth Circuit law in observing that the mere "fact that evidence is electronic does not mean that access is uniform in each district." Appx7. *TikTok* is in accord: "The question is *relative* ease of access, not *absolute* ease of access." 85 F.4th 352, 358 (5th Cir. 2023) (quoting *In re*

*Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013)).[1]  And the district court properly determined in this case that "access [to electronic sources of proof] would be more readily available in NDCA because most of the custodians of the relevant records are located there."  Appx7.

Haptic argues that "none of Apple's … declarations indicates that it would be difficult or burdensome for Apple's employees to access the relevant information from Apple's Austin Campus."  Pet. 13-14 (emphasis removed).  That is incorrect.  As explained, those declarations show that access to Apple's "[e]lectronic documents and source code related to" Back Tap is "restricted on a need-to-know basis" to certain Apple engineers, none of whom are in the Western District of Texas.  Appx106; *see* Appx5-7; Appx92-93; SAppx39; SAppx41.  Even though such evidence is electronic, it is not "equally accessible in either forum."  *TikTok*, 85 F.4th at 359 (quoting *Planned Parenthood*, 52 F.4th at 630); *contra* Pet. 12.  The district court therefore did not err in weighing this factor strongly in favor of transfer.  *See, e.g.*, *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1321 (Fed. Cir. 2021); *DoDots*, 2023 WL

---

[1] Indeed, *TikTok* approvingly cited this Court's precedent in connection with the sources-of-proof analysis.  85 F.4th at 359 n.6 (citing *In re Apple Inc.*, 979 F.3d 1332, 1339-40 (Fed. Cir. 2020)).

8642716, at *2; *In re Apple Inc.*, No. 2022-137, 2022 WL 1676400, at *1 (Fed. Cir. May 26, 2022).

Second, Haptic argues that the district court relied on "generic statements about most cases." Pet. 15. That is incorrect. The district court carefully assessed Apple's declaration-backed showing that the custodians of most relevant documents are based in California, Washington, or Canada, with none residing in the Western District of Texas. Appx5-7. The district court further correctly stated the principle that, in "patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer." Appx5 (quoting *In re Nintendo*, 589 F.3d 1194, 1199 (Fed. Cir. 2009)). Haptic's transfer opposition offered nothing to disprove that this principle applies here.

Haptic now insists its sources of evidence are especially relevant because "Haptic is a practicing entity" and "Haptic asserts claims for injunctive relief." Pet. 16. Haptic did not make this argument to the district court. *See* Appx311 (stating only that Haptic's documents might be relevant to "infringement, damages, the patent's priority date, and non-obviousness"); *HTC Corp. v. IPCom GmbH & Co.*, 667 F.3d 1270, 1281 (Fed. Cir. 2012) ("As a general rule, an appellate court does not

consider an issue not passed upon below.").  In any event, the district court did consider Haptic's sources of proof in Austin and the fact that its "business is based in WDTX," but it found Haptic's generic assertions insufficient compared to Apple's detailed declarations. Appx6; *contra* Pet. 16-17.

Finally, as explained below (at 21-24), Haptic's complaints about "untested declarations," Pet. 16, and purported shifts in custodian designations, Pet. 14, were not raised to the district court and are meritless in any event.

### 2. The district court correctly determined that the witness-convenience factor weighed heavily in favor of transfer.

The district court also correctly determined that the witness-convenience factor "weighs heavily toward transfer."  Appx11.  This Court and the Fifth Circuit have repeatedly recognized that the relevant inquiry is where "most relevant witnesses are" located. *TikTok*, 85 F.4th at 361; *see also, e.g.*, *In re Samsung Electronics Co.*, No. 2023-146, 2023 WL 8642711, at *2 (Fed. Cir. Dec. 14, 2023).  The district court properly applied that precedent here.  It credited Apple's showing, through sworn declarations, that the Apple employees

knowledgeable about the accused Back Tap feature, the sales and marketing of the accused products, and Apple's licensing practices are overwhelmingly located in Northern California (with some in Washington, Colorado, or Canada). Appx10. It likewise credited Apple's showing that no employees who are likely witnesses are located in Texas. Appx11. And, while it acknowledged that Haptic's CEO and a contract engineer are in Austin, and that Haptic's former president and the '738 patent's co-inventor is in Houston, the district court found the location of these individuals outweighed by the California-based Apple witnesses, particularly since "patent cases usually focus on the activities of the alleged infringer." Appx10-11.

Haptic's petition mischaracterizes the facts and the law in its arguments, many of which were not presented to the district court.

***Apple did not shift positions.*** Haptic's first argument suggests the district court relied "on a factually incorrect number of witnesses in California." Pet. 20. According to Haptic, this is because Apple "shift[ed] positions" on the relevant witnesses between its transfer briefing and its initial disclosures, served after transfer briefing was complete but before the ruling issued. Pet. 19. This is not accurate.

The basis for Haptic's argument is not entirely clear. Haptic says Apple "submitted four declarations from *only* California-based witnesses who purportedly had relevant knowledge of the development of the accused Back Tap feature." Pet. 18-19 (citing Appx89-107). But Haptic cites only *three* declarations (out of the eight Apple provided). Appx89-107. One of those three is from Mr. Norwood, who is in Austin (not California) and does *not* have knowledge about Back Tap. Appx89-91. Indeed, Apple submitted only one declaration from an employee (California-based engineer Varun Maudgalya) with technical knowledge about Back Tap.

As best Apple can tell, however, Haptic's first complaint—that Apple's initial disclosures "*did not list* two of those California-based witnesses who had submitted declarations"—refers to the declarations Apple submitted from (1) Erik Perez, an Apple Business Specialist who was based in Houston when he attended the 2016 meeting with Haptic but has since moved to Sacramento, SAppx33-34; and (2) Paul Ferrell, a Cupertino-based member of Apple's Retail Product Merchandising Team, which interacted with Haptic regarding potentially selling Knocki in Apple stores, SAppx42-43. But they are not listed for one

simple reason: Apple does not believe they have information relevant to this case, which Apple plainly stated in its transfer motion. *See* SAppx10-11; Fed. R. Civ. P. 26(a)(1)(A)(i) (requiring disclosure of "individual[s] likely to have discoverable information"). Contrary to Haptic's assertions, none of the Apple employees are relevant to a showing of willful infringement, because none were involved with the design or development of the accused technology. *Supra* 8.

Second, Haptic is incorrect that Apple's initial disclosures "identified *two new* Apple witnesses as having relevant knowledge of the development of the Back Tap feature." Pet. 19. Haptic appears to refer to John Nefulda, who is based in Ontario, Canada, and Tim Paek, who is based in Seattle. *See* Appx437; Appx116. Yet the very first page of Apple's transfer motion identified "relevant engineers … in Seattle and Canada," and Apple discussed those engineers throughout its brief. SAppx6-8; SAppx15. Mr. Maudgalya's declaration likewise explained that "the engineers who worked on the functionality underlying the Back Tap feature are based in Cupertino, Seattle, and Canada," including "all the inventors listed on [Apple's] U.S. Patent No.

11,416,136 who currently work at Apple." Appx106. Two of those engineer-inventors are Mr. Nefulda and Mr. Paek. Appx116.

Apple plainly did not take "shifting positions," as Haptic claims. Pet. 19.

***Haptic showed no need for venue discovery.*** Haptic's second argument on the witness-convenience factor concerns venue discovery. Pet. 20-23. Before the district court, Haptic included a single line generically requesting unspecified "venue-related discovery"—while acknowledging that the district court has "broad discretion" on whether to allow such discovery. Appx318. Before this Court, however, Haptic criticizes Apple's sworn declarations as "untested" or "selective" and complains that it was not allowed to test their veracity through discovery. Pet. 20-23.

There is no reason to believe Apple's declarations, which contain detailed factual allegations, are unreliable. *See, e.g.*, *Favela v. Collier*, 91 F.4th 1210, 1214-15 (5th Cir. 2024) (district court is "required to believe" sworn declarations containing specific factual allegations). Indeed, Haptic never questioned the reliability of Apple's evidence at the district court, even in its passing request for venue discovery.

Unlike Haptic's cited case (Pet. 21), the district court here did not "uncritically accept[]" a movant's "conclusory assertions" about the location of certain evidence. *Def. Distributed v. Bruck*, 30 F.4th 414, 434 (5th Cir. 2022). It relied on sworn, competent evidence.

Furthermore, as Haptic itself recognized, the district court has substantial discretion in determining whether to permit such threshold discovery—and while some district courts provide venue discovery as "standard practice," Pet. 21, Haptic does not and cannot claim that this is the norm across districts (or historically). *See Washington v. Norton Mfg., Inc.*, 588 F.2d 441, 443 (5th Cir. 1979) ("[T]he District Judge has broad discretion" on whether "to allow discovery on jurisdictional issues").

Haptic suggests that discovery was necessary here because of supposed "inconsistencies" in Apple's declarations. Pet. 21; *see also* Pet. 18-20. That is untrue, as demonstrated above (at 21-24).

Haptic's other alleged bases for needing venue discovery fare no better. Haptic notes that Apple identified Kunal Naik as a Haptic employee, whereas Haptic says he never worked there. Pet. 21-22. But the district court expressly recognized Haptic's objection and did not

count Mr. Naik in its analysis.  Appx8-9 & n.3.  It is not clear why

Haptic needed discovery to reinforce a fact the district court accepted.

Haptic also says it "could have asked about which of the *seventeen* co-

inventors listed on Apple's so-called Back Tap patent U.S. 11,416,136,

are relevant to the issues in this case."  Pet. 22.  But nothing prevented

Haptic from suggesting that those inventors might be relevant.  And

many of those inventors are located in California, while none appear to

be located in Texas.  *See* Appx116; Appx106.  It is therefore unclear how

discovery on this issue could have supported Haptic's claim that the

Western District of Texas is convenient.

**Texas-based witnesses.**  Haptic's third argument on the witness-

convenience factor is that the district court gave insufficient weight to

Texas-based witnesses.  Pet. 23-26.

Haptic first charges that the district court "failed to consider the

cost of attendance for Austin-based Apple employee Adam Norwood,"

Pet. 24, because it says the court "ignored that Mr. Norwood's testimony

is relevant evidence of willfulness," Pet. 20.  But Haptic fails to explain

how this could be so, given Mr. Norwood's sworn testimony that he (a

Retail Solutions Engineer) was not involved with the design or

development of Back Tap and does not recall any discussion of Haptic

patents or applications in the 2016 meeting.  Appx89-90.  Regardless,

the district court credited Mr. Norwood in its analysis; it simply gave

less weight to him than to the teams of Apple employees located in

California that have more relevant information.  Appx11 & n.4; *see*

*TikTok*, 85 F.4th at 361 ("The presence of one Texas witness cannot

overcome the immense inconvenience that the majority of relevant

witnesses would face if this case were to be tried in Texas.").

　　Haptic is also incorrect in asserting that "the District Court[]

fail[ed] to consider … the convenience of Haptic's witnesses."  Pet. 24.

The district court specifically acknowledged Haptic's "Austin-based

CEO," Mr. Boshernitzan; its "Austin-based contract engineer[]"; and its

former president (and co-inventor) Mr. Nezer, based in Houston.

Appx10.  The district court did not, as Haptic accuses, "consider[] only

the convenience of Apple's witnesses," Pet. 26; it simply rejected

Haptic's showing as insufficient compared to the number of significant

witnesses located in Northern California.  Appx10-11.[2]

---

[2] Although Haptic now seems to complain that the district court did not
consider its former Chief Technology Officer, John Boyd, in the willing-

Haptic likens this case to *In re Clarke*, 94 F.4th 502 (5th Cir.

2024)—a case that issued before the transfer ruling, but which Haptic

did not bring to the district court's attention.  Pet. 24.  But there, Mr.

Clarke was "the lead plaintiff" and undisputedly "the primary witness

in th[e] case."  94 F.4th at 507, 514.  Here, while Mr. Boshernitzan is

certainly relevant, Haptic does not and cannot contend that he is the

single most important witness—particularly given the district court's

reasonable recognition that "patent cases usually focus on the activities

of the alleged infringer."  Appx11.

### *Haptic's flawed arguments about Austin convenience.*

Haptic claims that the mere existence of Apple's Austin campus

ameliorates inconvenience to Apple's California-based witnesses.  Pet.

24-25.  Contrary to Haptic's contention, this argument is not

undisputed; indeed, it flatly contradicts binding precedent.  *See In re*

*Volkswagen AG*, 371 F.3d 201, 205 (5th Cir. 2004) (focusing on "the time

when [witnesses] are removed from their regular work or home

responsibilities").  Tellingly, Haptic (Pet. 24-25) cites only a district

---

witness analysis, Pet. 23, Haptic's transfer opposition identified Mr.
Boyd as a witness requiring compulsory process, and the district court
considered him as such.  *See* Appx312-314; Appx8-9.

court transfer ruling that this Court overruled. *See Apple*, 979 F.3d at 1347 (granting mandamus and ordering transfer in *Uniloc 2017 LLC v. Apple Inc.*, No. 6:19-cv-00532 (W.D. Tex.)). Haptic even recycles the debunked (and irrelevant) assertion that "Apple's Austin Campus even includes a hotel for its employees." Pet. 24; *see In re Apple Inc.*, No. 24-111 (Fed. Cir. Feb. 1, 2024), Dkt. 2-2 at 225 ("Apple is not currently building a hotel in W.D. Tex. and has no internal approved plans to do so.").

Finally, the fact that Apple has sought transfer to the Austin Division in other cases—involving different accused technology, products, and witnesses—is irrelevant. *Contra* Pet. 25; *see* SAppx49-50. The question under § 1404(a) is the convenience of "relevant witnesses in *this* case." *TikTok*, 85 F.4th at 362 (emphasis added). The district court concluded that most likely witnesses in this case would find Northern California a clearly more convenient forum, and Haptic has failed to show any error in that conclusion.

### 3. The district court properly found the compulsory-process factor neutral.

The district court concluded that the compulsory-process factor was neutral. Appx9. Assessing the "non-party witnesses whose

29

attendance may need to be secured by a court order," Appx7 (citing

*Volkswagen II*, 545 F.3d at 316), the district court carefully evaluated

each party's evidence and concluded that seven of the eight non-party

witnesses that Apple identified in California were potentially relevant,

while eight of the ten non-party witnesses that Haptic identified in

Texas were potentially relevant. Appx7-9. "Given that both parties

have identified a similar number of potential non-party witnesses

subject to compulsory process in either NDCA or WDTX," the district

court concluded that "this factor is neutral." Appx9.

Haptic argues that the district court should not have counted the

three prior-art witnesses that Apple identified. Pet. 30. Haptic argues

that there is a lack of "evidence that the purported NDCA-based prior

art systems are actually relevant to Apple's invalidity defenses." Pet.

29. But the district court found that Apple had adequately "explain[ed]

why the non-party companies may have relevant prior art." Appx8-9.

That was all Apple was required to show at this stage. *See In re Google

LLC*, 58 F.4th 1379, 1385 (Fed. Cir. 2023) (affirming that the

compulsory-process factor favored transfer where movant identified

"potential witnesses" of non-parties subject to subpoena power in

transferee district); *In re Apple Inc.*, No. 2021-181, 2021 WL 5291804, at
*3 (Fed. Cir. Nov. 15, 2021) ("[T]here … is no reason to doubt that
employees of [third-party companies] Google and Nuance in the
Northern District of California have relevant and material information
as … Apple ha[s] alleged."). Haptic's complaints improperly attack the
merits of Apple's invalidity contentions. *See, e.g.*, *In re Apple Inc.*, 818
F. App'x 1001, 1004 (Fed. Cir. 2020) (holding that challenge to
plausibility of plaintiff's infringement theory was "a merits issue, not
one that should be decided on mandamus review in the context of a
motion to transfer venue").

Haptic says Apple failed to show "that relevant evidence would be
located in each of these companies' NDCA offices." Pet. 30. But that,
too, is not Apple's burden at this stage. Haptic cites no authority
suggesting otherwise. Instead, it cites a case in which a district court
categorically held that prior-art witnesses are unlikely to testify, Pet.
30—an approach this Court has soundly rejected. *See, e.g.*, *Juniper
Networks*, 14 F.4th at 1319 (collecting cases).

Despite its invitation to this Court to reweigh the evidence, Haptic
"has not made a persuasive case that the district court erred" in finding

the compulsory-process factor neutral. *DoDots*, 2023 WL 8642716, at
*2.

### 4. The district court correctly found the practical-problems factor neutral.

The district court properly deemed the final private-interest factor
neutral. This factor concerns "all other practical problems that make
trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545
F.3d at 315. Haptic's lone argument on this factor was its contention
that "it is significantly less expensive to try a case in Austin than in
Northern California." Appx315. The district court rejected this
argument, correctly noting that Haptic failed to cite "any case law to
support the consideration of such expenses under this factor." Appx11.

Haptic fails to show any error in the district court's analysis.
Despite now claiming that "numerous courts" have considered costs
under this factor, Pet. 31, Haptic cites a single magistrate judge ruling
that recited a party's argument regarding costs but did not adopt it.
*VisionX Techs., LLC v. Sony Grp. Corp.*, No. 2:22-cv-00178-RSP, 2023
WL 3572898, at *4 (E.D. Tex. May 19, 2023). Moreover, as the *VisionX*
court went on to acknowledge, *id.* at *4 n.1, *Planned Parenthood*
addressed travel and lodging costs only under the witness-convenience

factor—and even then deemed it "not altogether clear in which direction these various costs weigh." 52 F.4th at 631.

Regardless, Haptic provided no evidence to support its contention about the relative costs here. Instead, Haptic relied solely on the "Federal Government's per diem rates" for employees traveling to San Francisco and Austin. Appx315. Haptic cannot fairly criticize the district court for not considering "the significantly higher costs of hotels and flights" (Pet. 31) when Haptic provided no evidence of such costs.

## B. The district court properly assessed the public-interest factors.

The public-interest factors relevant to a § 1404(a) transfer analysis include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Volkswagen II*, 545 F.3d at 315 (citation omitted). Here, the parties and district court agree that the third and fourth items in this list are neutral. Appx14; SAppx25; Appx317. The district court found that the court-congestion factor "is neutral or weighs slightly in favor of transfer at best," but it weighed

33

the local-interest factor "heavily in favor of transfer" in light of the "connection between NDCA and the events that gave rise to this suit." Appx13-14.  Haptic's petition fails to show any error, let alone a clear abuse of discretion, in the district court's analysis of these factors.

### 1.   The district court properly gave minimal weight to the court-congestion factor.

The district court's court-congestion analysis hewed carefully to governing law.  Citing this Court's caselaw, the district court recognized that this factor focuses on how quickly a case can be resolved and thus concerns "whether there is an appreciable difference in docket congestion between the two forums."  Appx12 (quoting *In re Adobe Inc.*, 823 F. App'x 929, 932 (Fed. Cir. 2020); citing *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009); *Apple*, 979 F.3d at 1343).  The district court also recognized that this factor is "given little weight compared to the other transfer factors" because of the speculation involved in the analysis.  Appx12 (citing *Genentech*, 566 F.3d at 1347).

The district court then applied that precedent to the facts of this case.  It acknowledged Apple's argument that the Western District of Texas had some current congestion and observed that "the undersigned has a particularly busy civil caseload, with over 900 pending civil

34

cases." Appx12.  It also acknowledged Haptic's argument that its resolution of pro hac and extension motions weighed against transfer, but explained that "[t]his Court has yet to resolve Apple's pending motion to dismiss or enter a scheduling order in this case."  Appx12-13. Then, balancing the evidence of docket congestion in Austin with the speculative nature of the inquiry, the district court concluded that "this factor is neutral or weighs slightly in favor of transfer at best."  Appx13.

Haptic's petition wholly mischaracterizes the district court's analysis.  Haptic ignores the district court's stated holding that it was treating this factor as neutral or, given the district court's high caseload, some slight pro-transfer weight.  Instead, Haptic suggests that the district court gave the court-congestion factor decisive weight in the transfer analysis because, in Haptic's telling, the conclusion that the Northern District of California was clearly more convenient "can only be explained by the District Court's concern over its own case congestion."  Pet. 10.  To support this theory, Haptic speculates about "frustrati[on]" on the district court's part with "delays in filling judicial vacancies" and an "unworkable" scenario of "[a] docket without an Article III judge."  Pet. 10.

But the district court expressed none of the frustration Haptic attributes to it, nor does its order contain even a hint of concern about the docket situation Haptic describes. The district court did not mention judicial vacancies, even in its brief reference to its current caseload. There is certainly nothing in the order to suggest that court congestion played a meaningful role—let alone a decisive one—in the outcome. Indeed, in summing up all the relevant factors, the district court reiterated that court congestion was "neutral." Appx14. The district court's transfer ruling turned instead on its well-supported conclusions that "the ease of access to proof, cost of attendance, and local interests … all weigh strongly in favor of transfer," while no factor "weigh[ed] in favor of keeping venue in the Western District of Texas." Appx14; *see supra* Part I.A.1-2; *infra* Part I.B.2.

Haptic incorrectly characterizes the district court's finding in a flawed attempt to liken this case to *Clarke*, recently decided by the Fifth Circuit, in which the transfer analysis was very different. *See* Pet. 10-11. The district court's ruling here is fully consistent with *Clarke*, where the district court had found all of the private-interest factors neutral and granted transfer solely based on its assessment of court

36

congestion and local interest.  94 F.4th at 509.  The Fifth Circuit found

it "was not clearly an abuse of discretion for the court to find that

congestion favored transfer," but it held that local interest was, "at

most, neutral" in the analysis.  *Id.* at 510, 513.  With court congestion

being the only pro-transfer factor, the Fifth Circuit explained that this

alone could not justify the district court's transfer grant: "It is well-

settled law that § 1404(a) transfer cannot be granted solely because of

court congestion."  *Id.* at 515.

The district court here did not grant transfer solely because of

court congestion.  It treated court congestion as neutral in the analysis,

while acknowledging Apple's showing that the factor might, "at best,"

have some minimal pro-transfer weight.  Appx13.  The extremely

limited role that court congestion played in the transfer analysis here

accords with *Clarke* and with the Federal Circuit precedent the district

court invoked.  It cannot possibly amount to a clear abuse of discretion

warranting mandamus.

### 2.    The district court correctly found that the local-interest factor heavily favors transfer.

The district court properly concluded that the local-interest factor

"weighs heavily in favor of transfer."  Appx14.  Both this Court and the

Federal Circuit have repeatedly emphasized that this factor concerns "not merely the parties' significant connections to each forum writ large, but rather the 'significant connections between a particular venue and *the events that gave rise to a suit*.'" *Apple*, 979 F.3d at 1345 (quoting *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010)); *accord TikTok*, 85 F.4th at 364. The district court recognized this principle as well. Appx13. And it adhered to that principle in reasoning that the Northern District of California—the site of "Apple's development and implementation of the [accused] Back Tap features"—has a connection to "the events that gave rise to this suit" and therefore a cognizable local interest under § 1404(a). Appx13; *see also, e.g.*, *In re Samsung Electronics Co.*, 2 F.4th 1371, 1380 (Fed. Cir. 2021) (deeming research, design, and development of accused products to be "significant factors" that give a forum "a legitimate interest in adjudicating the cases 'at home'" (citation omitted)).

Haptic's mandamus petition raises the same flawed arguments that the district court already rejected. None provides a basis to grant mandamus. First, Haptic stresses the December 2016 meeting that took place between Apple and Haptic in Houston. *See* Pet. 27-28. But,

as the district court recognized, that meeting "took place outside of WDTX," in the Southern District of Texas.  Appx14.  It therefore cannot create a local interest in a totally different judicial district.  *Cf. Apple*, 979 F.3d at 1346 (questioning relevance of servers in the Northern District of Texas in assessing the local interest of the Western District of Texas); *Volkswagen II*, 545 F.3d at 317-18 (distinguishing between local interest of Dallas Division of Northern District of Texas and Marshall Division of Eastern District of Texas).

Haptic also argues that "Austin has a local interest in resolving a dispute involving the key technology developed by one of its own companies, Haptic, which has kept its principal place of business in Austin since 2017."  Pet. 28.  But, as the district court correctly observed, "[i]t was not Haptic's creation of Knocki that gave rise to this suit but rather Apple's creation of an allegedly infringing product, which largely took place in NDCA and not in WDTX."  Appx13-14.  Haptic fails even to acknowledge that finding, let alone offer any reason for how such a plainly correct rationale could constitute an abuse of discretion.

Haptic's broader focus on the location of parties and potential witnesses is also misplaced. *See* Pet. 28-29. As the Fifth Circuit has recently reiterated, the local-interest factor is not about "the parties' connections to the venue" but rather "is concerned with the interest of *non-party citizens* in adjudicating the case." *Clarke*, 94 F.4th at 511. And, as this Court has explained, reducing the local-interest factor to overlap with private-interest considerations such as witness convenience and evidentiary access "essentially render[s] this factor meaningless." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009).

The district court was well within its discretion to weigh this factor heavily in favor of transfer.

## II.    Mandamus Is Not Appropriate Under the Circumstances.

Mandamus is inappropriate in this case. "[W]rits of mandamus are supervisory in nature and are particularly appropriate when the issues also have an importance beyond the immediate case." *Volkswagen II*, 545 F.3d at 319. Haptic has not shown that there are any issues of importance beyond the immediate case warranting this Court's intervention.

Haptic's only attempt to do so is its suggestion that "WDTX's use of 'Docket II' in place of an Article III judicial assignment could motivate future erroneous decisions on Section 1404(a) transfer motions."  Pet. 32-33.  As explained above, that motivation is imagined.  *Supra* 35-37.  The district court properly gave the court-congestion factor minimal (if any) weight in the transfer analysis; it certainly did not allow this factor to drive the outcome.  There is no need to remedy a harm that does not exist.

Nor is there a sound basis to grant a mandamus petition that is, in substantial part, founded in arguments that could have been presented to the district court but were not.  *See supra* 17-19 (*TikTok* and *Planned Parenthood*); 24-26 (venue discovery); 36-37 (*Clarke* and court-congestion).[3]  Haptic is not asking this Court to assess the district court's exercise of discretion; it is asking this Court to exercise its own discretion in the first instance.  That is not an appropriate basis on which to issue an extraordinary writ.

---

[3] Although Haptic acknowledges *Clarke* was decided "weeks before the District Court issued its transfer order," Pet. 3 n.3, Haptic made no attempt to bring *Clarke* to the district court's attention, even though Apple cited court congestion as one of many factors supporting transfer, SAppx23-24.

## CONCLUSION

The Court should deny the petition.

Respectfully submitted,

/s/ Melanie L. Bostwick

| | |
|---|---|
| Roger A. Denning | Melanie L. Bostwick |
| Seth M. Sproul | Jonas Q. Wang |
| FISH & RICHARDSON P.C. | ORRICK, HERRINGTON & |
| 12860 El Camino Real, Suite 400 |   SUTCLIFFE LLP |
| San Diego, CA  92130 | 2100 Pennsylvania Avenue, NW |
| | Washington, DC  20037 |
| Joy B. Kete | (202) 339-8400 |
| FISH & RICHARDSON P.C. | |
| One Marina Park Drive | |
| Boston, MA  02210 | |

*Counsel for Respondent*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 21(d)(1) because this brief contains 7795 words.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in Century Schoolbook 14-point font.

ORRICK, HERRINGTON & SUTCLIFFE LLP

*/s/ Melanie L. Bostwick*
Melanie L. Bostwick
*Counsel for Respondent*